**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-261-STV

MICHAEL LEVINE, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

VITAMIN COTTAGE NATURAL FOOD MARKETS INC.,
doing business as Natural Grocers

    Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Plaintiff Michael Levine's Omnibus Motion and Memorandum of Law for Conditional Certification and Court-Authorized Notice (the "Motion"). [#21] Defendant Vitamin Cottage Natural Food Markets, Inc. ("Natural Grocers") opposes the Motion [#33], and Plaintiff has filed a reply [#34]. The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##15, 16] This Court has carefully considered the Motion and related briefing, the entire case file, the applicable case law, and the arguments made by the parties at the October 8, 2020 hearing on the Motion [#40]. For the following reasons, the Court **GRANTS** the Motion.

**I.   BACKGROUND[1]**

Natural Grocers is a Colorado corporation that owns and operates more than 150 grocery stores in nineteen states.  [#17 at ¶¶ 14-15]  Plaintiff Michael Levine was employed as an Assistant Store Manager ("ASM") in a store located in Highlands Ranch, Colorado, from approximately March 2018 to April 2019.  [*Id.* at ¶ 10]  As an ASM, Levine worked over 40 hours in a workweek and/or 12 hours in a day and, on average, worked between 50 to 60 hours per week.  [*Id.* at ¶¶ 11, 30]

Natural Grocers employs more than 3,000 people across the United States, including dozens of ASMs at its retail stores.  [*Id.* at ¶ 16]  According to the operative Complaint, "Natural Grocers maintained control, oversight, and direction over [Levine] and similarly situated employees, including with respect to the timekeeping, payroll, and other employment practices that applied to them."  [*Id.* at ¶ 18]  "Natural Grocers applies the same employment policies, practices, and procedures to all ASMs at all of its stores, including policies, practices, and procedures with respect to the payment of overtime compensation."  [*Id.* at ¶ 19]

"The primary job duties of [Levine] and the [ASMs] are uniform throughout [Natural Grocers'] stores; they are subject to the same corporately-derived policies and procedures."  [*Id.* at ¶ 48]  These primary duties were routine tasks, including helping customers, moving freight, stocking shelves, building displays, counting inventory, and cleaning the store.  [*Id.* at ¶ 32]  These duties were the same or similar to tasks performed by hourly, non-exempt employees.  [*Id.* at ¶ 33]  Levine and other ASMs

---

[1] The Court makes the initial determination of whether a FLSA collective action may be maintained based on the allegations in the operative complaint and any supporting affidavits filed by the plaintiff.  *Norwood v. WBS, Inc.*, No. 15-cv-00622-MSK-KMT, 2016 WL 7666525, at *1 (D. Colo. Sept. 29, 2016).

2

primary duties did not include hiring, firing, making employment decisions, scheduling, or disciplining other employees.  [*Id.* at ¶ 34]

Levine alleges that Natural Grocers violated the Fair Labor Standards Act ("FLSA") and the Colorado Wage Claim Act ("CWCA") by improperly classifying him and other ASMs as exempt employees.  [*See generally* #17]  Levine filed the instant suit on January 31, 2020.  [#1]  Levine filed the instant Motion for Conditional Certification on April 22, 2020.  [#21]

In addition to Levine as the named Plaintiff, six other individuals have consented to join in this action.  [##6-1, 35-1]  Levine and five of the individuals who have consented to this action have filed declarations in support of the Motion for Conditional Certification.  [##21-2; 21-3; 21-4; 21-5; 21-6; 30-1]  In these declarations, the individuals detail similar experiences as ASMs working for Natural Grocers.  [*Id.*]

Specifically, each of the individuals notes that ASMs worked at least 45 hours per week.  [*Id.*]  Each of these individuals worked between 45 and 55 hours per week.  [*Id.*]  Each of the individuals notes that the stores were generally busy and they were not always able to take an uninterrupted, 30-minute lunch break.  [*Id.*]  Each of these individuals used the same time-keeping program called Ulti-Pro.  [*Id.*]

According to the declarations, each of the individual's primary duties included helping customers, moving freight, stocking shelves, building displays, counting inventory, cleaning the store, and otherwise standing in as a cashier, stocker, or other hourly worker.  [*Id.*]  These individuals spent approximately 80-90 percent of their time performing these tasks.  [*Id.*]  According to their declarations, Natural Grocers closely controlled each of these individual's job duties and has extensive policies, procedures,

3

and work rules for how ASMs must perform their duties. [*Id.*] Many of these policies were set forth in Natural Grocers' employee handbook. [*Id.*] None of these individuals had the authority to hire, fire, discipline, or promote other employees, or set other employees' rate of pay. [*Id.*]

Levine seeks conditional certification of the following class:

> All current and former "Assistant Store Managers" who worked for Natural Grocers in the United States at any time on or after January 31, 2017 to the present, and who were classified as exempt from overtime compensation.

[#21 at 4]

## II. STANDARD OF REVIEW

Section 216(b) of the Fair Labor Standards Act ("FLSA") provides the exclusive means of bringing class-wide claims to redress alleged violations of the FLSA. *See* 29 U.S.C. § 216(b); *Norwood v. WBS, Inc.*, No. 15-cv-00622-MSK-KMT, 2016 WL 7666525, at *1 (D. Colo. Sept. 29, 2016). Contrary to the procedures governing a class action under Rule 23, plaintiffs who wish to participate in a FLSA collective action must opt in to the action. *See Norwood*, 2016 WL 7666525, at *1.

An FLSA collective action may only be maintained by and among "similarly situated" employees. *Id.* The Tenth Circuit has adopted a two-step analysis governing that determination. *Id.* "At the initial 'notice stage,' the trial court must determine whether plaintiffs have made 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). The court makes this initial determination relying upon the allegations in the complaint and any supporting affidavits filed by the plaintiffs. *Id.* "[T]he court does not weigh evidence, resolve factual

4

disputes, or rule on the merits of plaintiffs' claims" during the notice stage. *Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1263 (D. Kan. 2015) (quotation omitted). Certification at step one is conditional, "and the standard of proof 'is a lenient one that typically results in class certification,' allowing notice to be sent to the putative class members and discovery to be undertaken." *Norwood*, 2016 WL 7666525, at *1 (quoting *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004)); *see also Young v. Dollar Tree Stores, Inc.*, No. 11-cv-01840-REB-MJW, 2012 WL 3705005, at *2 (D. Colo. Aug. 24, 2012) (describing the conditional certification burden as "minimal").

After the completion of discovery, the second, or "decertification," stage occurs. *Norwood*, 2016 WL 7666525, at *1. During the decertification stage, the court applies a much stricter standard to determine whether class members are similarly situated. *See id.* "In making that determination, the court must evaluate, *inter alia*, 'the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made any required filings before instituting suit.'" *Id.* (quoting *Brown*, 222 F.R.D. at 679)).

Natural Grocers argues that some courts apply a more rigorous standard at the initial stage when significant discovery has already occurred, and that such a standard should apply here because the parties have engaged in substantial discovery. [#33 at 16] But "courts within the Tenth Circuit have consistently declined invitations to proceed directly to the more rigorous second stage analysis," even where the parties have engaged in substantial discovery. *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2012 WL 1414325, at *4 (D. Colo. Apr. 21, 2012) (collecting cases); *see also Pack v.*

*Investools, Inc.*, No. 09-cv-1042, 2011 WL 3651135, at *3 (D. Utah Aug. 18, 2011) (declining to apply the second stage analysis, even though defendant had provided nearly 9,000 documents and responded to plaintiff's interrogatories and requests for admissions); *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166-67 (D. Kan. 2006) (finding that bypassing the first stage of class certification was inappropriate even though the parties had taken multiple depositions and the defendant had produced almost 6,000 documents). Accordingly, the Court will consider whether Levine has made substantial allegations that the putative class members are similarly situated, applying the minimal burden of proof required at stage one. *See Norwood*, 2016 WL 7666525, at *1.

### III.   ANALYSIS

The parties disagree with respect to whether Levine has made substantial allegations that the putative class is similarly situated. [*See generally* ##21, 33, 34] In the event the Court concludes that Levine has satisfied his stage one burden of proof, Natural Grocers nevertheless argues that the proposed notice is not fair or accurate. The Court addresses each issue in turn below.

#### A. Whether Levine has made substantial allegations that the putative class is similarly situated

As discussed above, at this initial notice stage, Levine need only assert "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. Levine alleges that Natural Grocers violated the FLSA by improperly classifying him and other ASMs as exempt employees, enabling Natural Grocers to withhold overtime wages due to them

for working over 40 hours a week. [*See generally* #17] Natural Grocers makes several challenges to conditional certification.

First, Natural Grocers argues that Levine has failed to show that he was subject to a nationwide policy whereby ASMs' primary duties consisted of non-managerial work. [#33 at 18] But, as described above, Levine has submitted six affidavits from ASMs asserting their primary duties included helping customers, moving freight, stocking shelves, building displays, counting inventory, cleaning the store, and otherwise standing in as a cashier, stocker, or other hourly worker. [##21-2; 21-3; 21-4; 21-5; 21-6; 30-1] These individuals affirm that they spent approximately 80-90 percent of their time performing these non-managerial tasks. [*Id.*] Courts in this Circuit have found similar affidavits sufficient for conditional certification. *See Olivas v. C&S Oilfield Servs., LLC*, 349 F.Supp.3d 1092, 1110-11 (D.N.M 2018) (finding affidavits from six oilfield workers each asserting that their primary duties consisted of manual labor sufficient to conditionally certify the class). And while Natural Grocers argues that six declarations are insufficient to justify conditional certification [#33 at 24-25], courts in this district have found a single employee's affidavit, coupled with the allegations in a complaint, sufficient to satisfy the "substantial allegations" requirement for conditional certification. *See, e.g., Lysyj v. Milner Distrib. All., Inc.*, No. 13-cv-01930-RM-MJW, 2014 WL 273214, at *3 (D. Colo. Jan. 24, 2014) ("Even looking solely to the allegations of the complaint and the affidavit of David Rhoads, this Court finds that Plaintiffs have satisfied the minimal burden necessary to the conditional certification of a collective action under § 216(b)." (quotations omitted)); *Daugherty v. Encanca Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011) (finding allegations by plaintiff that he did not

receive overtime pay and that he believed others did not receive overtime pay, coupled with his declaration and that from one other employee, sufficient to meet burden for conditional certification).

Second, Natural Grocers cites to deposition testimony to argue that the "evidence shows that ASMs were not subject to a uniform Natural Grocer[]s['] policy or practice requiring them to primarily perform non-exempt tasks." [#33 at 19] But Natural Grocers' requested analysis into the merits of Plaintiff's FLSA claim is not appropriate at the conditional certification stage. *See Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp.3d 1074, 1091 (D. Colo. 2016) ("[A]t this phase of FLSA conditional certification, 'the Court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims.'" (quoting *Bryant v. Act Fast Delivery of Colo., Inc.*, No. 14-cv-00870-MSK-NYW, 2015 WL 3929663, at *2 (D. Colo. June 25, 2015))); *Darrow v. WKRP Mgmt.*, LLC, No. 09-cv-01613-CMA-BNB, 2012 WL 638119, at *4 (rejecting argument that claims were too conclusory to support conditional certification, in part, because "at this [initial certification] stage, the Court must determine only whether the [putative class members] are similarly situated, not whether Plaintiff's FLSA claim has merit"). Merit analysis will occur after preliminary certification.

Finally, citing out-of-circuit authority, Natural Grocers argues that "[w]hen available evidence suggests that retail store managers and assistant store managers work in factually disparate circumstances with different levels of responsibility, courts across the country routinely decline to conditionally certify a nationwide class." [#33 at 21] Natural Grocers then cites to deposition testimony to compare the duties of the various ASMs who have sought to join in this action. [*Id.* at 21-24] But, once again, the

Court makes the conditional certification determination relying upon the allegations in the complaint and any supporting affidavits filed by the plaintiffs. *See Norwood*, 2016 WL 7666525, at *1. "[T]he court does not weigh evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims" during the notice stage. *Koehler*, 93 F. Supp. 3d at 1263 (quotation omitted). The Court thus declines Natural Grocers' invitation to weigh the competing deposition testimony at the conditional certification stage.

Accordingly, the Court finds that Levine has made substantial allegations that the putative class is similarly situated. The Court thus **GRANTS** the Motion for Conditional Certification.

### B. Whether Notice is Sufficient

Notice to FLSA collective action members must "contain accurate information concerning the collective action so that potential plaintiffs can make informed decisions as to their participation." *Armijo v. Star Farms, Inc.*, No. 14-cv-01785-MSK-MJW, 2015 WL 13310426, at *2 (D. Colo. Dec. 14, 2015). Here, Natural Grocers argues that the Notice should be revised to: (1) contain the contact information for Natural Grocers' counsel, and (2) disclose the possible burdens of litigation including the potential for fees and costs. [#33 at 26] Natural Grocers also argues that the Notice should not be posted in Natural Grocers' stores. [*Id.* at 26-27] The Court addresses each argument below.

First, Natural Grocers argues that the Notice should contain defense counsel's contact information. [*Id.* at 26] The Court "sees no reason to include defense counsel on the class notice. Defense counsel does not play a role in managing the distribution of the notice or the gathering of consent forms. Including additional lawyers only

9

creates the potential for confusion of those who receive the notice." *Cryer v. Intersolutions, Inc.*, No. 06-2032, 2007 WL 1053214, at *3 (D.D.C. Apr. 7, 2007); *see also Morden v. T-Mobile USA, Inc.*, No. C05-2112RSM, 2006 WL 2620320, at *4 (W.D. Wash. Sept. 12, 2006) (finding "no basis in law or logic" to include defense counsel's contact information on notice). Accordingly, Natural Grocers' request to include defense counsel's contact information on the notice is denied.

Next, Natural Grocers argues that the Notice should contain information about the potential burdens of litigation, including discovery obligations and the potential for an award of fees and costs. [#33 at 26] With respect to including a warning about the danger of imposition of fees and costs, the Court finds that this could discourage putative members from joining the litigation and would run contrary to the FLSA's remedial purposes. Accordingly, the Court declines to include such a warning in the Notice. *See Abdulina v. Eberls Temp. Servs. Inc.*, No. 14-cv-00314-RM-NYW, 2015 WL 12550929, at *7 (D. Colo. April 27, 2015) (declining to issue similar warning because it would have a chilling effect), *report and recommendation adopted as modified*, 2015 WL 4624251 (D. Colo. Aug. 4, 2015); *Delaney v. Geisha*, LLC, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (declining to warn putative class members of potential costs). With respect to discovery obligations, however, the Court agrees with Natural Grocers that the Notice should inform putative class members that they may be required to participate in the discovery process if they opt in. *Abdulina*, 2015 WL 12550929, at *7; *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629(KPF), 2013 WL 5211839, at * 7 (S.D.N.Y. Sept. 16, 2013) (finding that the advantages of providing a neutral explanation of opt-in plaintiffs discovery obligations outweighs the possibility of dissuading potential

10

plaintiffs).  Potential opt-in members should be informed that they may contact Plaintiff's counsel if they have questions about their discovery obligations.

Finally, Natural Grocers argues that notice should not be posted in its stores. [#33 at 26-27]  "Courts routinely approve the posting of notice on employee bulletin boards and in common employee spaces. . . .  Posting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in."  *Mendoza*, 2013 WL 5211839, at *9.  Accordingly, the Court will approve the posting of the Notice in an employee-only section of Natural Grocers' stores.

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED**:

(1) Levine's Motion for Conditional Certification [#21] is **GRANTED**;

(2) The following class is conditionally certified for purposes of Levine's FLSA collective action claims:

> All current and former "Assistant Store Managers" who worked for Natural Grocers in the United States at any time on or after January 31, 2017 to the present, and who were classified as exempt from overtime compensation.

(3) The parties are ordered to meet and confer and draft a stipulated Notice and process for the collective action no later than November 23, 2020.  The Notice shall be consistent with this Order.

DATED:  November 6, 2020                    BY THE COURT:

                                             s/Scott T. Varholak
                                            United States Magistrate Judge